## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | |
|---|---|
| RONNIE HANKINS, MARY BLACKWELL, and TOMMY HANKINS, ) ) ) Plaintiffs, ) ) v. ) ) DR. THOMAS BREDEMAN, UNKNOWN HILL, DR. KAREN DUBERSTINE, and JOHN DOE 1-4, ) ) ) ) ) Defendants. ) | No. 1:19-CV-189 JAR |

### **MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of self-represented plaintiff Ronnie Hankins for leave to commence this action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $59.32. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will strike plaintiffs Mary Blackwell and Tommy Hankins from this action and dismiss the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

### **Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff Ronnie Hankins submitted a copy of his certified inmate account statement. (ECF No. 6). A review of his account indicates an average monthly deposit of $151.67 and an average monthly balance of $296.58. Plaintiff Hankins has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $59.32, which is 20 percent of his average monthly balance.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a self-represented complaint under 28 U.S.C. § 1915, the Court accepts

2

the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded).

**The Amended Complaint**

Plaintiffs Ronnie Hankins ("Hankins" or "plaintiff"), Mary Blackwell, and Tommy Hankins bring this action pursuant to 42 U.S.C. § 1983. Named as defendants are Dr. Thomas Bredeman, Unknown Hill (chronic care nurse), Dr. Karen L. Duberstine, and John Doe 1-4. Defendants are being sued in their individual capacities only. Plaintiffs filed their original complaint on October 23, 2019 (ECF No. 1), and an amended complaint on December 26, 2019 (ECF No. 8). Neither Mary Blackwell nor Tommy Hankins signed the original complaint, the amended complaint, or filed separate motions to proceed *in forma pauperis.*

Plaintiff Hankins is currently incarcerated at Southeast Correctional Center ("SCC"). Plaintiffs Mary Blackwell and Tommy Hankins are not incarcerated. The allegations in the amended complaint relate solely to claims of deliberate indifference to the serious medical needs of Hankins, which include liver and lower back pain, cancer, and Hepatitis C, during his

3

incarceration at SCC.  While the amended complaint states that Mary Blackwell and Tommy Hankins were "in agreement to pay the full cost for the medication needed to treat plaintiff Hankins' Hepatitis C disease," it is devoid of any facts or allegations related to how the named defendants violated their constitutional rights.

Hankins was diagnosed with Hepatitis C on January 25, 2011.  Plaintiffs allege that on January 31, 2013 and April 29, 2013, Dr. Bredeman "refused and denied plaintiff the new FDA approved medication foe [sic] treating plaintiff's Hepatitis C."  Plaintiffs further allege that Dr. Bredeman denied Hankins "triple therapy treatment, which includes the interferon injection ribavirin and protease inhibitor."  Plaintiffs state that Dr. Bredeman "on many occasions denied Hankins his requested medical treatment" and instead chose "the easier and less efficacious treatment plan, with significant delays in providing medical treatment."  Plaintiffs refer to an affidavit Dr. Bredeman allegedly wrote on March 17, 2016, which states "the appropriate treatment regimen for Mr. Hankins" is to "rest and monitor his liver enzyme levels and APRI score in Hepatitis C chronic care clinic (at least every six (6) months)."  Plaintiffs state his levels were not checked from 2017 to 2019, but do not allege that Dr. Bredeman was responsible for checking his levels, was his treating physician during those years, or that he refused to monitor.  Plaintiffs further allege that Dr. Bredeman conspired with the other defendants to decline treatment.

Hankins started to present to Nurse Hill in January of 2018 with complaints of severe pain in his "right side (liver area)."  On September 10, 2018, Nurse Hill informed him that his "ALT and AST's were very low" and it was like "he didn't have Hepatitis C."  On December 6, 2019, Nurse Hill told him "the reason he was having pain in his right side with headaches" was because he was dehydrated.   Hankins was subsequently diagnosed with "deadly" cancer by an unidentified

4

individual.  Plaintiffs allege that Nurse Hill told Hankins that she would "check to see what kind of medication he could take" and send him to "regular chemotherapy treatment" in Jefferson City, but failed to do either.  Plaintiffs further allege that Nurse Hill did not provide Hankins with pain medication and treated him with a "cheap" oral chemotherapy pill.  Plaintiffs also allege that Nurse Hill conspired with the other defendants to provide insufficient treatment.

Plaintiffs assert that in February 2016, Dr. Duberstine prescribed Hankins with five (5) tuberculosis ("TB") medications, which required him to take eleven (11) pills "at one time once every day for X amount of months."  Plaintiffs state that on March 4, 2016, Hankins was "forced to agree" to take the medication because Dr. Duberstine threatened to petition the warden for an order "to forcefully hold plaintiff down and stick the drugs up plaintiff's rectum."  Dr. Duberstine subsequently prescribed Hankins with liquid medication, which appeared to be a substitution for the pills Hankins did not want to consume.  On April 5, 2016, Hankins asked Dr. Duberstine if he could return to the pill regimen because the liquid medication caused him to vomit.  Plaintiffs allege Dr. Duberstine inappropriately refused to put him back on the pills despite "knowing when [he] took them in pill form [he] did not have any problem keeping them down."  Dr. Duberstine allegedly declined to put him back on the pill regimen because of his "attitude" and again threatened to "force" the liquid "up his rectum" if he refused to comply.  However, nowhere in the amended complaint does plaintiff allege that Dr. Duberstine actually administered any of his medications by rectal suppository.  Plaintiffs also take issue with the fact that the liquid medication had "red flag" warnings "that it could ca[u]se cancer to the liver and other parts of the body."  Plaintiff claims he was diagnosed with cancer in 2019 because of the liquid medication.

5

Plaintiffs also allege that Dr. Duberstine conspired with the other defendants to provide insufficient treatment.

Plaintiff seeks an unspecified amount of actual, compensatory, and punitive damages. Plaintiff also seeks "a perfect health[y] liver and other body parts" if his medication "will not repair plaintiff's liver."

## Discussion

### A. Plaintiffs Mary Blackwell and Tommy Hankins

The amended complaint has only been signed by prisoner plaintiff Ronnie Hankins. Non-prisoner plaintiffs Mary Blackwell and Tommy Hankins have not signed the amended complaint. Rule 11(a) of the Federal Rules of Civil Procedure requires an unrepresented party to personally sign all of his or her pleadings, motions, and other papers. Similarly, the local rules of this Court also require that all filings be signed by a self-represented party. E.D. Mo. L.R. 2.01(A)(1).

Additionally, only plaintiff Ronnie Hankins has submitted for leave to commence this action without prepayment of the required filing fee. (ECF No. 4). Pursuant to 28 U.S.C. § 1915(a), the plaintiffs must either pay the filing fee or submit separate motions to proceed *in forma pauperis*. Based on the above, it is not apparent to the Court that Mary Blackwell or Tommy Hankins has authorized the filing of this lawsuit.

To the extent plaintiff Ronnie Hankins can be understood to attempt to bring this action on behalf of Mary Blackwell and Tommy Hankins, he is advised this is impermissible. While he may plead and conduct his own case personally, he lacks standing to bring claims on behalf of others. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that, in general, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his

6

claim to relief on the legal rights or interests of third parties."). Moreover, a non-attorney, self-represented litigant may not represent someone else in federal court. *See* 28 U.S.C. § 1654; *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (stating that "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him."); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir.1986) (stating that a person who is not licensed to practice law may not represent another individual in federal court).

The Court will therefore direct the Clerk of Court to strike plaintiffs Mary Blackwell and Tommy Hankins from this action. However, nothing in this Memorandum and Order should be construed as precluding Mary Blackwell and Tommy Hankins from filing their own civil action, either on their own behalf or with the assistance of counsel.

### B.  Claim Against Dr. Thomas Bredeman

Plaintiff Hankins alleges that in 2013 Dr. Bredeman "refused and denied the new FDA approved medication" for Hepatitis C; denied "triple therapy treatment" or interferon-based therapy; and "on many occasions denied . . . his requested medical treatment" by choosing "the easier and less efficacious treatment plan, with significant delays in providing medical treatment." Plaintiff also alleges that Dr. Bredeman conspired with the other defendants to provide ineffective treatment.

Plaintiff sued Dr. Bredeman in this Court on April 29, 2015, in which he alleged deliberate indifference to his serious Hepatitis C medical needs in violation of the Eighth Amendment and conspiracy to medically harm him.[1]  *See Hankins v. Russell, et al.*, 4:15-CV-697-HEA (E.D. Mo.)

---

[1] The Court takes judicial notice of its own records regarding a prior civil proceeding filed by plaintiff.  *See Lockett v. United States*, 333 F. App'x 143, 144 (8th Cir. 2009) (citing *Chandler v. United States*, 378 F.2d 906, 909-10 (9th

7

("*Hankins I*").  The Court dismissed these claims on summary judgment on September 30, 2016, holding:

> The fact that Plaintiff has not received medication for his Hepatitis C does not establish deliberate indifference.  It is undisputed that Plaintiff requests Hepatitis C therapy, but he has provided no evidence, other than his own opinion, that he requires this medication.  "Prisoners do not have a right to any particular course of medical care."  Plaintiff is closely monitored and it is clear that Defendant[] [Bredeman] will take the necessary action if Plaintiff's condition worsens to the point that Hepatitis C therapy is needed.   Plaintiff may disagree with his physicians 'opinions, but under Eighth Circuit law, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." The Court finds defendants were not deliberately indifferent to plaintiff's medical needs by refusing Hepatitis therapy.

*Hankins I*, 2016 WL 5689892, at *9 (E.D. Mo. Oct. 3, 2016) (internal citations omitted).  The Court also held that plaintiff failed to demonstrate that Dr. Bredeman engaged in a civil conspiracy against him.  *Id.* at *10.

Res judicata, or claim preclusion, applies against parties who participated in prior proceedings and "had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect."  *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 731 (8th Cir. 2004). Under claim preclusion, a final judgment bars any subsequent suit where "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."  *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). The Eighth Circuit interprets the phrase "the same claims or causes of action" to mean claims that arise out of the same nucleus of operative facts.  *Banks v. International Union EETSM Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004) (noting the court adopted the position of the Restatement

---

Cir. 1967) (district court can take judicial notice of its own records)).

(Second) of Judgments, § 24).

In both *Hankins I* and the instant lawsuit, plaintiff alleged that Dr. Bredeman's treatment of his Hepatitis C violated the Eighth Amendment and that Dr. Bredeman engaged in a civil conspiracy. *Hankins I* resulted in a final judgment regarding the same claims or causes of action that plaintiff brings in this case. Plaintiff again complains of Dr. Bredeman's 2013 denial of his request for new FDA medications and interferon-based therapy; but *Hankins I* already dismissed that claim and determined that such treatment "was not medically indicated at that time based on Plaintiff's Genotype and fibrosis stage." 2016 WL 5689892, at *6. Plaintiff does not allege any new constitutional violations claims against Dr. Bredeman that occurred after the final judgment in *Hankins I*. As a result, claim preclusion bars plaintiff from pursuing his instant claims against Dr. Bredeman for treatment of his Hepatitis C and civil conspiracy from 2013 to 2016.

Even if the instant amended complaint could be liberally construed to allege that Dr. Bredemen acted with deliberate indifference to his serious medical needs after the final judgement was issued in *Hankins I*, plaintiff fails to set forth any facts to support this claim, such as when or how treatment was refused. While plaintiff states that his enzyme levels were not checked from 2017 to 2019, he does not allege that it was Dr. Bredeman's responsibility to check his enzyme levels, that Dr. Bredeman was his treating physician from 2017 to 2019, or that Dr. Bredeman personally denied him of regular monitoring. Plaintiff only alleges that Dr. Bredeman wrote an affidavit in 2016 stating that that his enzyme levels should be checked every six (6) months.

Plaintiff further alleges that Dr. Bredeman "on many occasions denied Hankins his requested medical treatment" and instead chose "the easier and less efficacious treatment plan, with significant delays in providing medical treatment." As *Hankins I* held, mere disagreement

9

with a physician's treatment plan, does not rise to the level of a constitutional violation. *See* 2016 WL 5689892 ("[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions)" (quoting *Pietrafeso v. Lawrence Cnty., S.D.*, 452 F.3d 978, 983 (8th Cir. 2006)).

Thus, plaintiff has failed to state how Dr. Bredeman was directly responsible for any alleged medical mistreatment after *Hankins I* was issued. "It is not enough to allege that [a] 'defendant[]' refused to treat his injuries. A federal complaint must contain the 'who, what, when and where' of what happened, and each defendant must be linked to a particular action." *Drummer v. Corizon Corr. Health Care*, 2016 WL 3971399, at *1 (E.D. Mo. July 25, 2016); *see also Miles v. Corizon Healthcare*, 2019 WL 2085998, at *4 (E.D. Mo. May 13, 2019) (a general refusal to treat allegation, without any additional information, is nothing more than a conclusory statement and cannot suffice to state a cause of action under the Eighth Amendment). Thus, plaintiff's allegations, without any additional facts, are simply too vague and conclusory to permit the inference that Dr. Bredeman was deliberately indifferent to a serious medical need. Similarly, plaintiff has not alleged any facts to support Dr. Bredeman's involvement in a civil conspiracy. Although this Court must liberally construe self-represented complaints, the Court will not create facts or construct claims that have not been alleged. *See Stone*, 364 F.3d at 914-15.

Liberally construing the amended complaint, plaintiff's allegations against Dr. Bredemen will be dismissed under claim preclusion and pursuant to § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

### C. Claim Against Nurse Hill

Plaintiff takes issue with the treatment Nurse Hill provided him from 2018 to 2019.

Plaintiff alleges it was improper for her to administer him chemotherapy pills and that she should have sent him for "regular chemotherapy treatment" in Jefferson City. Plaintiff further alleges that Nurse Hill did not provide him with pain medication or look into other medications he should be prescribed. Plaintiff also alleges that Nurse Hill conspired with the other defendants to provide insufficient treatment.

In order to establish a constitutional violation based on inadequate health care, a plaintiff must show that the defendant was deliberately indifferent to a serious medical need. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). Medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence does not amount to a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Rather, a plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn*, 557 F.3d at 908 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). When a prison official does not implement a prisoner's requested course of treatment, no question of deliberate indifference is created. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). Medical care so inappropriate as to evince intentional maltreatment or a refusal to provide essential care may violate the Eighth Amendment, but a mere disagreement with the course of medical treatment prescribed does not constitute a deliberate indifference claim. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991) (citations omitted).

In this case, plaintiff has not pled facts sufficient to assert a claim of deliberate indifference on the part of Nurse Hill. As to plaintiff's allegation that Nurse Hill did not provide him with pain medication, he fails to allege that he requested pain medication from her; does not identify the name of the medication he was allegedly supposed to receive; and fails to state that he had a

11

prescription for a specific medication. If plaintiff did not have a prescription, plaintiff fails to allege that Nurse Hill had the decision-making authority to dispense pain medication to him.

Similarly, as to plaintiff's complaints that Nurse Hill did not send him to Jefferson City for regular chemotherapy treatment or research other medications he should take, plaintiff again does not allege that Nurse Hill had any authority to prescribe medication or determine eligibility for intravenous chemotherapy. Even if she did have such authority, plaintiff does not allege how any such failures rose above the level of mere medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence. *See Estelle*, 429 U.S. at 106. Further, plaintiff fails to allege facts explaining how providing oral chemotherapy over intravenous chemotherapy was improper or how it constituted deliberate indifference to a serious medical need. Accordingly, plaintiff's allegations lack the element of deliberate indifference required to state an Eighth Amendment claim.

As for the conspiracy claim, to properly plead a claim for civil conspiracy under § 1983, a plaintiff must include factual allegations showing a "meeting of the minds" concerning unconstitutional conduct; although an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy. *See Mershon v. Beasely*, 994 F.2d 449, 451 (8th Cir. 1993).

Here, plaintiff has failed to assert a meeting of the minds among the alleged conspirators or present any facts indicating that Nurse Hill conspired with the defendants. Without specific facts regarding the alleged conspiracy, the amended complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557; *Iqbal*, 129 S.Ct. at 1949. Without alleging facts that Nurse Hill agreed to deprive plaintiff of any constitutional

rights, plaintiff fails to state a claim for conspiracy against Nurse Hill under 42 U.S.C. § 1983.

Thus, liberally construing the amended complaint, plaintiff's allegations against Nurse Hill will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

### D.  Claim Against Dr. Karen L. Duberstine

Plaintiff alleges that Dr. Duberstine acted with deliberate indifference to his medical needs when she prescribed him eleven (11) pills per day for TB treatment.   Hankins did not want to take the pills, but Dr. Duberstine threatened to petition the warden to permit her to forcibly "stick the drugs up plaintiff's rectum."  Dr. Duberstine subsequently prescribed plaintiff with liquid medication, which appeared to be a substitution for the pills he expressed he did not want to consume.  Plaintiff alleges that the liquid medication caused him to vomit and Dr. Duberstine subsequently and inappropriately refused to put him back on the pills despite "knowing when [he] took them in pill form [he] did not have any problem keeping them down."

As to these allegations, a prison official does not violate the Eighth Amendment when, in the exercise of professional judgment, he or she refuses to implement a prisoner's requested treatment. *Kayser*, 16 F.3d at 281.  A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under § 1983.  *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim"). Plaintiff originally complained about having to take eleven (11) pills at one time, so it appears from the amended complaint that Dr. Duberstine replaced the pills with a liquid regimen.  Dr. Duberstine's failure to switch him back to the pill regimen after plaintiff reported vomiting as a

13

side effect, while arguably negligent, does not rise to the level of a deliberate indifference as it was within Dr. Duberstine's professional discretion to determine a course of treatment for plaintiff's TB diagnosis.

Moreover, to the extent Hankins alleges he was "forced" to take the TB pills is contrary to his statement that he specifically requested the pill regimen after he determined that he did not like the liquid version. Plaintiff also does not present any facts to support forcible medication treatment, such as an allegation that Dr. Duberstine held him down or placed him in restraints until he complied.

Plaintiff alleges that Dr. Duberstine violated his constitutional rights by threatening to petition the warden for permission to administer the TB medication through his rectum if he refused to comply. Before the state may treat a prisoner against his will: (1) a treating physician must find that the medication is in the prisoner's medical interest; (2) a tribunal or reviewing panel must review the treating physician's decision; and (3) the prisoner must have had the opportunity to argue before the tribunal or reviewing panel that he does not need the medication. *Fuller v. Dillon*, 236 F.3d 876, 881 (7th Cir. 2001) (citations omitted). Based on the facts provided, it was well within Dr. Duberstine's authority to advise plaintiff of her ability to escalate the situation to the warden and request an order that he be required to take the prescribed medication.

Plaintiff's allegation that Dr. Duberstine inappropriately provided him with liquid medication that had warnings that it could cause cancer also does not rise to the level of a constitutional violation. Plaintiff does not allege any facts demonstrating that Dr. Duberstine was aware of a serious risk of harm when she prescribed the medication, other than his conclusory statement that she knew of "red flags." Yet, even if Dr. Duberstine was on notice that the

14

liquid TB medication could cause cancer, plaintiff still fails to allege facts showing that Dr. Duberstine's conduct was more than mere negligence. Although plaintiff alleges that he was diagnosed with cancer four years later in December 2019, he does not provide any facts to show a causal relationship between the liquid medication he was prescribed in 2016 and his cancer diagnosis in 2019.

Lastly, as to plaintiff's civil conspiracy claim against Dr. Duberstine, plaintiff has failed to show a meeting of the minds among the alleged conspirators or present any facts indicating that she conspired with any of the defendants. *See Mershon*, 994 F.2d at 451. Without specific facts regarding the alleged conspiracy, the amended complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557; *Iqbal*, 129 S.Ct. at 1949.

Thus, liberally construing the amended complaint, plaintiff's allegations against Dr. Duberstine will be dismissed pursuant to § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

### E. Claim Against John Doe 1-4

Fictitious parties may not generally be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). However, an action may proceed against a party whose name is unknown if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). Plaintiff's amended complaint is completely devoid of any specific factual allegations against the John Doe defendants that would permit the Court to identity them after any reasonable discovery. Plaintiff's amended complaint is limited to allegations against Dr.

15

Bredeman, Nurse Hill, and Dr. Duberstine.   Plaintiff does not state claims against any unidentified parties.

Thus, liberally construing the amended complaint, plaintiff's allegations against John Doe 1-4 will be dismissed pursuant to § 1915(e)(2)(B) as legally frivolous and for failure to state a claim upon which relief can be granted.

### Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (ECF No. 7). The motion will be denied as moot as this action is being dismissed for failure to state a claim.   *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (ECF No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $59.32 within twenty-one (21) days of the date of this Order.   Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **STRIKE** plaintiffs Mary Blackwell and Tommy Hankins from this action.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (ECF No. 7) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim.   *See* 28 U.S.C. § 1915(e)(2)(B).   A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 12th day of June, 2020.

                                                    _____
                                                    JOHN A. ROSS
                                                    UNITED STATES DISTRICT JUDGE